UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America

                Plaintiff,

v.

Paul Lucki Smith,

                Defendant.

Criminal Case No: 18-cr-20411

Hon. Bernard A. Friedman

_____

**DEFENDANT'S EMERGENCY MOTION FOR MODIFICATION OF
SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)(i) DUE TO COVID-19**

Defendant Paul Lucki Smith, through his counsel Leif K. Anderson, respectfully requests that the Court modify Mr. Smith's 51-month prison sentence for health care fraud and money laundering/multiple monetary transactions to time served and allow him to serve the remainder of his sentence in home confinement due to the danger posed by the deadly COVID-19 virus. Given the danger posed by COVID-19, Mr. Smith requests that the Court abbreviate the briefing schedule and hear this motion as soon as possible.

The undersigned conducted telephone conferences with the United States Attorney's Office (Shankar Ramamurthy and Peter Ziedas) and made written request to the Bureau of Prisons in which the undersigned explained the nature of this motion, its legal basis and the requested relief and requested but did not obtain concurrence in the relief sought.

Mr. Smith relies on the attached brief and exhibits in support of this motion.

1

**BRIEF IN SUPPORT OF DEFENDANT'S EMERGENCY MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)(i) DUE TO COVID-19**

## ISSUES PRESENTED

I.      **WHETHER THE COURT SHOULD EXERCISE ITS POWER UNDER 18 U.S.C. § 3582(C)(1)(A)(i) TO MODIFY MR. SMITH'S 51-MONTH PRISON SENTENCE TO TIME SERVED AND ALLOW MR. SMITH TO SERVE THE REMAINDER OF HIS SENTENCE IN HOME CONFINEMENT DUE TO THE DANGER THE COVID-19 VIRUS POSES TO MR. SMITH.**

Mr. Smith answers "Yes."

The United States answers "No."

The Court should answer "Yes."

## CONTROLLING AUTHORITY

18 U.S.C.  §3582(c)(1) …………….………………………………………….

18 U.S.C. §3553(a) ………………………………………………………...

USSG 1B1.13 ……………………………………………………………

Attorney General William Barr's March 26, 2020 Memorandum for Director of Bureau of Prisons…………………………………………….

Attorney General William Barr's April 3, 2020 Memorandum for Director of Bureau of Prisons…………………………………………….

## <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

"The essence of justice is mercy."
*Edwin Hubbel Chapin*

Defendant Paul L. Smith is currently serving a 51-month prison sentence after pleading guilty to health care fraud and money laundering/multiple monetary transactions. Mr. Smith is presently imprisoned at FCI Terre Haute in Indiana.

The COVID-19 virus is ravaging prisons throughout the nation, including FCI Terre Haute, creating an unprecedented and deadly crisis for inmates and prison staff alike. The danger is so great that Attorney General William Barr declared the COVID-19 virus a "state of emergency" at the BOP and instructed the BOP to "move with dispatch" in "utiliz[ing] home confinement [for inmates], where appropriate, to protect the health and safety of BOP personnel and the people in our custody."[1]

Mr. Smith is particularly vulnerable to contracting COVID-19 and suffering life-threatening consequences if he does. In this regard, Mr. Smith recently suffered a prolonged respiratory infection (pneumonia) which places him at higher risk of life-threating illness if he contracts Covid-19. Further, Mr. Smith has a compromised immune system due to a long history of depressive disorders, is obese and suffers from high blood pressure, which factors the CDC and other authorities

---

[1] See **Exhibits B** and **C** Attorney General Barr's Memorandums to BOP dated March 26, 2020 and April 3, 2020.

3

recognize as increasing the risk of contracting Covid-19 and suffering more serious illness or death as a result.

In prison, Mr. Smith is at an increased risk of contracting Covid-19 as he lives in a crowded, contained environment, is unable to practice "social distancing" and has no access to alcohol-based hand sanitizers - which the CDC recommends as the primary ways to avoid contracting Covid-19.  Moreover, Mr. Smith is entirely at the mercy of the Bureau of Prisons ("BOP") to protect his health and safety - which it is failing to do.  In fact, there have now been multiple confirmed cases of Covid-19 at FCI Terre Haute and one prisoner has now died from contracting the virus.

Although Mr. Smith meets all criteria required to be released to home confinement, and he has made *repeated* requests to Warden Watson at FCI Terre Haute to release Mr. Smith to home confinement for his health and safety, Mr. Smith's requests have gone unanswered.  Thus, the necessity of this motion.

Under 18 USCS §3582(c)(1)(A)(i), the "compassionate release" statute, this Court has the power to modify Mr. Smith's sentence where "extraordinary and compelling reasons warrant such a reduction."  The COVID-19 pandemic and the threat it poses to Mr. Smith's life are such "extraordinary and compelling reasons" and warrant this Court (i) reducing Mr. Smith's prison sentence to time served and (ii) allowing him to serve the remainder of his sentence in home confinement or as the Court otherwise deems appropriate.

## FACTUAL BACKGROUND

A. **Mr. Smith's crimes of conviction and sentence.**

Defendant Paul Lucki Smith, Ph.D. previously practiced psychology in Shelby Township, Michigan.  On June 26, 2019, Mr. Smith pled guilty to Health Care Fraud in violation of 18 U.S.C. §1347 (Count 1 of the Indictment) and Money Laundering/Multiple Monetary Transactions in violation of 18 U.S.C. §1957 (Count XIV).  These convictions stemmed from Mr. Smith's billing Blue Cross Blue Shield for services which were not provided.  On January 7, 2020, the Court sentenced Mr. Smith to 51 months imprisonment (the low end of his sentencing range) followed by 2 years of supervised release upon his release (Docket #43, Judgment).[2]

B. **Mr. Smith's imprisonment at the Bureau of Prisons.**

The Bureau of Prisons ("BOP") designated Mr. Smith to serve his prison sentence at the Federal Prison Camp in Duluth, MN (**Exhibit A**, Declaration of Paul L. Smith).[3]  Mr. Smith self-surrendered to FPC Duluth on March 2, 2020.  On his first day, Mr. Smith met several prison staff for evaluation and orientation, including the chief psychologist, Dr. Eric Evenson.  Dr. Evenson and Mr. Smith knew each other, as they attended the same graduate school program and became friends.  Dr. Evenson indicated he had to notify the Warden of this potential conflict of interest.

---

[2] The Court sentenced Mr. Smith to 51 months imprisonment and 2 years of supervised release on each Count, to be served concurrently.

[3] Mr. Smith's declaration is submitted in accordance with 28 U.S.C. §1746.

8 days later, Mr. Smith was set to transfer to the Federal Prison Camp in Morgantown, WV ("FPC Morgantown")(**Exhibit A**, Smith Decl.).

On March 11, 2020, while traveling by bus to FPC Morgantown, Mr. Smith and other inmates stopped overnight at the Federal Prison Camp in Sandstone, MN. The following day, after several hours of busing, Mr. Smith arrived at the Federal Correctional Institution in Terre Haute, Indiana ("FCI Terre Haute"). Mr. Smith was placed in the Segregated Housing Unit ("SHU") as a holdover, expecting to immediately travel on to Morgantown, WV.  However, the next day, on March 13, 2020, the BOP implemented system wide protective measures to combat the spread of, and harm caused by, COVID-19.  These measures, instituted by Warden Watson, included lockdown of all facility to facility movement (**Exhibit A**, Smith Decl.).

Mr. Smith remained in solitary confinement at FCI Terre Haute SHU *for 28 days* while the COVID-19 pandemic worsened and the U.S. Attorney General declared a state of emergency.  Mr. Smith was re-designated and transferred on April 10, 2020 to the Federal Prison Camp at Terre Haute ("FPC Terre Haute"), where he remains today under lockdown conditions (**Exhibit A**, Smith Decl.).[4]

## C. The WHO Declares COVID-19 a Pandemic and the Federal and State Governments Declare States of Emergency.

---

[4] FCI Terre Haute and FPC Terre Haute are part of the same BOP prison complex, overseen by Warden T.J. Watson.  See https://www.bop.gov/locations/institutions/tha/index.jsp.  For clarity, the complex is referred to herein as FCI Terre Haute unless otherwise noted.

As of June 16, 2020, the new strain of coronavirus that causes COVID-19 has infected over 7,941,71 people, leading to at least 434,76 deaths worldwide.  The United States leads the world with 2,07,592 confirmed cases and 115,484 deaths.[5]

On March 11, 2020, the World Health Organization (WHO) classified COVID-19 as a pandemic.[6]  On March 13, 2020, President Trump declared a State of Emergency for the nation due to COVID-19.[7]  On March 6, 2020, Indiana Governor Eric J. Holcomb declared a Public Health Emergency in Indiana due to COVID-19 via Executive Order 20-02.[8]

The State of Indiana is one of the hardest hit states, with 40,786 confirmed cases and 2,265 deaths.[9] The number of new cases and deaths are rising daily.  In fact, a recent study concluded that 4 counties in Indiana, including Vigo County where FPC Terre Haute is located, are among 22 metropolitan areas in 8 states that are "hotspots" where exponential growth is predicted to occur (**Exhibit F** at Ex.1).

### D. The CDC and Federal Government's Recommendations.

---

[5] https://covid19.who.int/.

[6] WHO Characterizes COVID-19 as a Pandemic, World Health Organization (March 11, 2020) at https://bit.ly/2W8dwpS.

[7] https://www.whitehouse.gov/briefings-statements/letter-president-donald-j-trump-emergency-determination-stafford-act/.

[8] https://www.in.gov/gov/files/20-(DeclarationofPublicHealthEmergencyfor COVID-19)FINAL.pdf.

[9] https://www.coronavirus.in.gov/.

To avoid contracting Covid-19, the CDC recommends that people (i) avoid close contact with people and practice "social distancing" by remaining at least 6 feet apart, (ii) use alcohol-based hand sanitizers, (iii) disinfect frequently touched surfaces, and (iv) wear a face covering when in contact with other people.[10]

E. **Attorney General William Barr declares a state of emergency at the BOP and directs the BOP to utilize home confinement where appropriate to protect inmates and personnel from contracting COVID-19.**

Prisons are prime breeding grounds for viruses given the closed environment and cramped living conditions. On March 26, 2020 Attorney General William Barr issued a Memorandum to the Director of the Bureau of Prisons directing the BOP to "utilize home confinement, where appropriate, to protect the health and safety of BOP personnel and the people in our custody." (**Exhibit B**.) As the COVID-19 epidemic at BOP facilities worsened, Attorney General Barr issued a second Memorandum on April 3, 3030, declaring that "emergency conditions [due to COVID-19] are materially affecting the functioning of the Bureau of Prisons", "expanding the cohort of inmates who can be considered for home release" and directing the BOP to "***move with dispatch*** in using home confinement, where appropriate, to move vulnerable inmates out of [BOP] institutions." (**Exhibit C**, emphasis added.) [11]

---

[10] https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.

[11] While Attorney General Barr's directives to the BOP are laudable, the BOP has failed to move "with dispatch" in utilizing home confinement. For example, on April

**F. Mr. Smith's requests to the Warden at FCI Terre Haute to be released to home confinement go unanswered.**

On April 16, 2020, Mr. Smith made a written request (via 2 emails) to Warden Watson at FCI Terre Haute, asking to be released to home confinement under the CARES Act, given the dangers posed by COVID-19 (see **Exhibit E**). Warden Watson merely instructed Mr. Smith to follow up with his Unit Manager Royer, which he did both in writing and in person. *Id.* In fact, between April 16 and April 22, 2020, Mr. Smith sent no less than 6 separate written requests to the Warden and his Unit Manager, along with in-person requests. *Id.* To date, Mr. Smith has received no response to his requests.

On May 6, 2020, the undersigned sent a written request to Warden Watson again requesting that Mr. Smith be released to home confinement due to the risks

_____

22, 2020 in *Wilson v. Williams,* Case No. 4:20-cv-00794 (Northern District of Ohio), U.S. District Court Judge James S. Gwin entered an injunction in favor of inmates seeking compassionate release due to COVID-19, requiring BOP Elkerton to speed its evaluation and release of inmates in accordance with Attorney General Barr's Memos (see **Exhibit D**, May 19, 2020 Order). On May 19, 2020, Judge Gwin entered an ordering finding the BOP had "made limited efforts" to comply with the injunction, had a testing process that "creeps", "made poor progress" transferring inmates and found "[b]y thumbing their nose at their authority to authorize home confinement, Respondents threaten staff and they threaten low security inmates." *Id.* Consequently, Judge Gwin ordered BOP Elkton to speed its review of inmates eligible for release and the transfer or release of eligible inmates. The United States Supreme Court recently refused to block the order.

posed by COVID-19 and demonstrating Mr. Smith meets all requirements for release

to home confinement (**Exhibit F**).  This request also went unanswered.

### G. FCI Terre Haute is experiencing outbreaks of COVID-19.

From the BOP website as of June 15, 2020:

06/15/2020 - The BOP has **133,532** federal inmates in BOP-managed institutions and **13,106** in community-based facilities. The BOP staff complement is approximately **36,000**. There are **1,220 federal inmates** and **168 BOP staff** who have confirmed positive test results for COVID-19 nationwide. Currently, **4,918** inmates and **498** staff have recovered. There have been **85** federal inmate deaths and **1** BOP staff member death attributed to COVID-19 disease.[12]

The BOP's website also reports that FCI Terre Haute now has 4 *confirmed*

cases of inmates with COVID-19, although this is undoubtedly understated.[13]

Moreover, the undersigned was recently informed by Mr. Smith that one prisoner

has now died from COVID-19.  While the BOP has not yet reported this, the death

was recently reported in the news.[14]  Thus, the situation at Terre Haute is worsening

by the day and inmates and staff are increasingly at risk of contracting Covid-19 and

---

[12] https://www.bop.gov/coronavirus/index.jsp.

[13] See  https://www.bop.gov/coronavirus/index.jsp.  As Mr. Smith attests in his declaration, there is no testing being done at FCI Terre Haute.  Moreover, according to the union representing employees at FCI Terre Haute, the prison only has 4 COVID-19 tests and is not using them.  Further, while the BOP website indicates there are 4 *confirmed* cases at FCI Terre Haute, the BOP indicates there are 1,220 inmates and 168 staff nationwide with "confirmed positive test results" but *more than four times as many* have contracted COVID-19 and are alleged to be recovering. Thus, "confirmed" cases of COVID-19 appear are being severely under-reported.

[14] See https://www.tribstar.com/news/federal-prison-in-terre-haute-records-first-covid-19-death/article_852d74da-9f86-11ea-ae3c-f7f139af47cc.html.

suffering sickness and even death, despite the BOP's efforts.  In short, the time to

act is now to protect both Mr. Smith and others at FCI Terre Haute from Covid-19.

## LEGAL ANALYSIS

### I.    The Compassionate Release Statute, 18 U.S.C. §3582.

18 U.S.C. §3582, the "compassionate release statute", as recently amended by

§603(b)(1) of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec.

21, 2018), provides in pertinent part:

> **(c) Modification of an imposed term of imprisonment.**  The court may not
> modify a term of imprisonment once it has been imposed except that—
> **(1)** in any case—
> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon
> motion of the defendant after the defendant has fully exhausted all
> administrative rights to appeal a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse of 30 days from the receipt of
> such a request by the warden of the defendant's facility, whichever is earlier,
> may reduce the term of imprisonment (and may impose a term of probation
> or supervised release with or without conditions that does not exceed the
> unserved portion of the original term of imprisonment), after considering the
> factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that
> they are applicable, if it finds that—
> **(i)** extraordinary and compelling reasons warrant such a reduction[.][15]

Thus, to be eligible for relief under §3582, a movant must show (1) exhaustion

of administrative rights to appeal or lapse of 30 days since a request to the warden

for release, and (2) extraordinary and compelling reasons for a reduction in a term

---

[15] Prior to the CARES Act amendment, only the BOP had authority to file
"compassionate release" motions for inmates.  Under the CARES Act amendment,
federal inmates may now file their own motions with the original sentencing court.

of imprisonment, which must be consistent with the factors in 18 U.S.C. § 3553(a). Here, Mr. Smith satisfies all of these requirements and asks that the Court reduce his prison sentence to time served and order the remainder of his sentence served in home confinement due to the life-threatening danger posed by COVID-19.

## II. Lapse of 30 Days From Request to Warden/Exhaustion of Administrative Remedies.

Mr. Smith made his initial request to Warden Watson to be released to home confinement under the CARES Act due to COVID-19 on April 16, 2020 (see **Exhibit E**). More than 30 days have elapsed since Mr. Smith's first request and, in fact, since ***all*** of his requests including the undersigned's. However, Mr. Smith's requests have all gone unanswered by FCI Terre Haute. Thus, the Court has jurisdiction to decide this matter based on the BOP's failure to act within 30 days. Mr. Smith cannot exhaust any administrative remedies, as the BOP has failed to make a decision that Mr. Smith can appeal. Thus, exhaustion is not a bar to this Court's exercising jurisdiction in this matter.

## III. Extraordinary and Compelling Reasons for Relief.

To determine if extraordinary and compelling reasons exist to release Mr. Smith to home confinement, the Court must decide if a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. §3582(c)(1)(A). The applicable policy statement, U.S.S.G. 1B1.13, provides as follows:

**1. Extraordinary and Compelling Reasons**.--Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

**(A) Medical Condition of the Defendant**.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I)  suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(II) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a jail and from which he or she is not expected to recover [. . .]

(D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Here, in support of his request for sentence modification, Mr. Smith presents

"Other Reasons" in combination with his medical condition and susceptibility to

COVID-19 and the potentially deadly consequences if he contracts the virus.

Numerous federal courts, including those in the Eastern District of Michigan,

hold that the Covid-19 pandemic and its threat to inmates justifies compassionate

release under §3582.  For example, in *Samy v. USA*, Criminal Case No. 16-20610-1

(U.S. District Court E.D.Mich.), Senior U.S. District Judge Arthur J. Tarnow wrote:

While the COVID-19 pandemic is devastating in every region it invades, prison populations are subject to heightened vulnerability. See, e.g., Danielle Ivory, "We Are Not a Hospital": A Prison Braces for the Coronavirus, N.Y. TIMES (March 17, 2020), https://www.nytimes.com/2020/03/17/us/coronavirus-prisons-jails.html (citing densely populated living conditions, shortage of masks, soap, and hand sanitizer, and the inability to routinely disinfect surfaces and maintain safe distances between inmates and guards as reasons prisoners are at increased risk of infection); See, e.g., Courtney Bublé, Federal Prisons Pose 'Imminent Danger' in Spreading COVID-19, Union Says, GOVERNMENT EXECUTIVE (April 6, 2020), https://www.govexec.com/oversight/2020/04/federal-prisons-pose-imminent danger-spreading-covid-19-union-says/164390/ (detailing a prison workers' union complaint to OSHA complaining of "imminent danger" due to the BOP's failure to follow national safety guidelines).

Furthermore, the persuasive precedent for granting compassionate release under the current circumstances is overwhelming. United States v Andre Williams, Case No. 04-cr-95/MCR, at *7 (N.D. Fla. April 1, 2020) ("[A]n outbreak of COVID 19 in Williams' facility would likely have fatal consequences for him. Based on these facts, the Court finds that Williams' deterioration in physical health is sufficiently serious to satisfy the medical criteria for a reduction in sentence."); United States v. Teresa Ann Gonzalez, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *3 (E.D. Wash. Mar. 31, 2020) ("Defendant is the most susceptible to the devastating effects of COVID-19. She is in the most susceptible age category (over 60 years of age) and her COPD and emphysema make her particularly vulnerable. 18 U.S.C. § 3582(c)(1)(A)(i) compassionate release granted."); United States v. Campagna, No. 16 Cr. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) ("Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify to Defendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide selfcare within the environment of the RCC."); United States v. Muniz, No. 4:09-CR0199-1, 2020 WL 1540325 (S.D. Tex. Mar. 30, 2020), at *2 ("Because Defendant is at high-risk for severe illness from COVID-19 and because inmates in detention facilities are particularly vulnerable to infection, the Court finds that Defendant has demonstrated an extraordinary and compelling reason for compassionate release."). [See **Exhibit G**, Judge Tarnow's April 16, 2020 Order granting compassionate release due to COVID-19.]

Here, Mr. Smith's medical conditions place him at increased risk of contracting Covid-19 and suffering severe illness and even death if he does, making the Covid-19 pandemic an extraordinary and compelling circumstance that justifies a reduction in sentence and compassionate release.

The CDC identifies certain people who are at increased risk of contracting Covid-19 and suffering serious health consequences including those (i) with a history of respiratory illness, (ii) that are immunocompromised and (iii) that are obese.[16]  Recent studies also find high blood pressure increases a person's risk of contracting Covid-19, having worse symptoms and dying from the infection.[17]  Here, Mr. Smith is at increased risk as he suffers from all of these conditions.

First, Mr. Smith has a long history of respiratory illnesses and suffered a prolonged (3 months) respiratory infection with pneumonia immediately prior to reporting to prison.  This is confirmed by his medical records from Henry Ford Health System (**Exhibit H**) and the attached letter from Mr. Smith's long-time physician Dr. Anthony Cardellio, who states:

> Due to Mr. Smith's recent infection with Pneumonia at the end of 2019 and early 2020, he is at higher risk for severe life-threatening complications if he contracts Covid-19.  Being confined in close proximity to multiple people greatly increases his risk for contracting Covid-19 and every precaution should be made to limit this risk and prevent severe complications due to Covid-19 infection. [Exhibit I.]

---

[16] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html
[17] https://www.webmd.com/lung/coronavirus-high-blood-pressure#1.

15

Mr. Smith is also immunocompromised.  As set forth in Mr. Smith's treatment records with Henry Ford (**Exhibit H**) Crossing Paths (**Exhibit J**), Mr. Smith has long suffered from major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder and adjustment disorder and takes medications for these disorders.  These depressive disorders weaken the immune system and cause increase susceptibility to illness.[18]  Given Mr. Smith's long-term affliction with these disorders, as documented by his medical records, Mr. Smith also suffers from a weakened/compromised immune system and he is at increased risk of contracting Covid-19 and suffering more severe symptoms, including death, if he does.

Finally, Mr. Smith is also obese and suffers from high blood pressure.  When Mr. Smith last treated at Henry Ford in late 2019, he was 6 feet tall and weighed 227 pounds, giving him a BMI of 30.79, which places him in the obese category (**Exhibit H**).[19]  The CDC and other medical experts note that obese individuals are at higher risk of severe illness from Covid-19.[20]  In addition, Mr. Smith's blood pressure at the time of last treatment was 124/88 (**Exhibit H**), which constitutes Stage 1 high

---

[18] https://www.dispatchhealth.com/blog/how-depression-affects-your-immune-system; https://www.psychologytoday.com/us/articles/200311/depression-hurts-the-immune-system.

[19] https://www.webmd.com/men/weight-loss-bmi.

[20] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html; https://www.medicalnewstoday.com/articles/latest-evidence-on-obesity-and-covid-19#Why-is-obesity-a-risk-factor?

blood pressure/hypertension.[21] High blood pressure also puts Mr. Smith at greater risk of contracting serious illness from Covid-19.[22]  In short, Mr. Smith suffers from numerous health conditions that place him at increased risk from Covid-19.

In addition, Mr. Smith's living conditions at FCI Terre Haute substantially increase his risk of contracting Covid-19.  To avoid contracting Covid-19 the CDC recommends that people (i) avoid close contact with other people and practice "social distancing" by remaining at least 6 feet apart, (ii) use alcohol-based hand sanitizers, (iii) disinfect frequently touched surfaces, and (iv) wear a face covering when in contact with people.[23]  Mr. Smith is unable to utilize these best practices.

As Mr. Smith attests in his declaration, there are approximately 289 inmates housed at FPC Terre Haute.[24]  Mr. Smith is housed in Cell 4 of Unit S08.  Unit S08 is 120 feet long x 30 feet wide (**Exhibit A**, Smith Decl. at Diagram A).  There are 45-50 inmates assigned to Unit S08.  There are 4 two-story berthing areas, a total of 8 units, connected by hallways (see **Exhibit A**, at Diagram B).  Thus, inmates are housed in extremely close proximity.  As Mr. Smith further attests in his Declaration:

---

[21] https://www.mayoclinic.org/diseases-conditions/high-blood-pressure/in-depth/blood-pressure/art-20050982.

[22] https://www.webmd.com/lung/coronavirus-high-blood-pressure#1.

[23] www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html

[24] According to the BOP, FPC Terre Haute currently houses 261 inmates, with another 987 housed at FCI Terre Haute. www.bop.gov/locations/institutions/tha/.

**Inability to practice social distancing**.  **Proximity in Cells**:  Mr. Smith is housed in a 10 foot x 20 foot cell with 8 beds (25 square feet total per inmate in their shared cells).  Thus, Mr. Smith cannot practice social distancing while in his cell or sleeping. **Proximity During Inmate Counts**: FPC Terre Haute conducts <u>10 inmate counts</u> per day.  Each count involves inmates gathering into unit groups (his unit has 45-50 inmates, there being 8 units total) in very close proximity. Mr. Smith cannot practice social distancing during the multiple counts.  **Proximity During "Pill Line"**:  The <u>"pill line" occurs 3 times daily</u> and typically sees gatherings of 15 to 20 people in immediate proximity. Mr. Smith cannot practice social distancing in the pill line. **Proximity in Commissary and Food Lines**:  The commissary and food lines typically have 20-30 inmates gathered at one time.  Mr. Smith cannot practice social distancing in the commissary and food lines (**Exhibit A**, Smith Decl.).

**Lack of hand sanitizer**.  As at all BOP facilities, inmates are not given access to alcohol-based sanitizers/disinfectants.  Rather, inmates are given 4 single-use bleach sanitizing wipes measuring 8 inches by 6 inches (**Exhibit A**, Smith Decl.).

**Staff not taking precautionary measures**. 70% of prison staff do not wear masks, increasing the risk of exposure to inmates.  Staff  also do not wear gloves or use hand sanitizers/disinfectants, notwithstanding that they routinely conduct impromptu searches and handle inmate property.  Further, computers and phones are not sanitized despite multiple inmates using them (**Exhibit A**, Smith Decl.).

**Inadequate quarantine efforts**.  In-house quarantine is located in Unit 7, directly below Unit 8 where Mr. Smith is housed.  Both units share the same ventilation shafts; there is no negative ventilation filtration and the air is shared between units and with the inner hallways.  In fact, there are sections of the flooring that have eroded so badly that inmates in Unit 8 can see, hear and even talk to inmates in the Unit 7 quarantine area and vice-versa (**Exhibit A**, Smith Decl.).  Thus, Mr. Smith is being directly exposed to those in quarantine for Covid-19.

**Lack of testing**.  Mr. Smith has not been tested for infection, nor is he aware of any inmates or staff being tested.  Mr. Smith was informed by staff they only have 4 COVID-19 tests, but none have been used (**Exhibit A**). This is consistent with statements from the union representing employees at FPC Terre Haute (see below).

**Housing with sick inmates who have COVID-19 symptoms**.  Many inmates at FPC Terre Haute have or had COVID-19-like symptoms. 4 of Mr. Smith's cellmates suffered severe COVID-19-like symptoms, including fever, chills, diarrhea and coughing.  Numerous other inmates became sick with similar symptoms that lasted a month, including coughing blood and weakness that made it hard to get out of bed or work.  None of the prisoner were tested for COVID-19 (**Exhibit A**).

Covid-19 continues to spread at rapid and unprecedented rates.  In Indiana, where Mr. Smith is incarcerated, the number of people infected with COVID-19 has grown from 10,093 on April 16 (when Mr. Smith made his first request to the

Warden for release to home confinement) to 39,909 confirmed cases and 2,240

deaths as of June 14, 2020 (more than quadrupling in a matter of weeks).[25] Moreover,

an independent study predicts that Vigo County, where FCI Terre Haute is located,

will experience exponential growth in COVID-19 outbreaks (see **Exhibit F** at Ex.1,

COVID-19: U.S. County Study by Dataminr).

In fact, since Mr. Smith's initial release request, the BOP now reports *4

confirmed cases* of Covid-19 at FCI Terre Haute and news outlets report that at least

*1 prisoner at FCI Terre Haute had now died from the virus*.[26] Thus, despite the

BOP's efforts, COVID-19 is now at FCI Terre Haute, posing a danger to inmates

and staff alike.  Risk of infection is so grave that the union representing employees

at FCI Terre Haute has publicly voiced concerns about safety inside the complex:

> AFGE Local 720 President Kenny Swick says, "It's very confined spaces, very confined areas and when we get sickness that comes in, it goes through that place like wildfire.  Swick says inmates are still being flown and bussed in from coronavirus "hot spots" like New York and Chicago. According to the BOP, these inmates are screened prior to movement and inmates are put into isolation if they are showing COVID-19 symptoms. Union leaders argue the transfers are simply not necessary right now and they put employees and the community at greater risk.  Meanwhile, Rubinacci says there is an adequate supply of personal protective equipment and N95 masks but union leadership has been fighting the agency to be able to use them. Instead, employees are being told they can use surgical masks.

> "It makes me nauseous really to think that the agency isn't taking that pandemic seriously."

---

[25] https://www.coronavirus.in.gov/ at newly reported cases by date graphic.
[26] https://www.bop.gov/coronavirus/index.jsp. Again, these are *confirmed* cases.

Swick says inmates with COVID-19 symptoms are not being tested. There are 4 tests at the compound but more than 4 inmates in isolation.

"It's an easy way to tell people that we don't have any inmates that are positive for this virus when we're not testing inmates."

Now, these union leaders are calling on the public to contact elected leaders so they can put pressure on the Department of Justice and Bureau of Prisons."[27]

In short, Covid-19 is now ravaging FCI Terre Haute, as it has at numerous other BOP institutions nationwide.  Mr. Smith now lives in a constant state of fear and panic.  He has a high risk of contracting COVID-19 and suffering life-threatening complications if he does.  His living conditions increase the likelihood he will contract the virus and he is powerless to protect himself.  These "extraordinary and compelling reasons" justify a reduction in Mr. Smith's sentence to time served and release to home confinement.

### IV.    §3553(a) Factors.

The compassionate release statute directs courts to consider the §3553(a) sentencing factors "to the extent that they are applicable" when considering modification of a sentence.  18 U.S.C. §3582(c)(1)(A).  These factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

---

[27] https://www.wthitv.com/content/news/Union-reps-raise-concerns-about-safety-inside-federal-prison-amid-outbreak-569141811.html.

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(5) any pertinent policy statement—

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Further, sentencing guideline §1B1.13 specifies that a reduction in sentence is only appropriate if "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. §3142(g)." Analysis of the salient factors weighs in favor of modifying Mr. Smith's sentence.

**A. The nature and circumstances of the offense and the history and characteristics of the defendant.**

Mr. Smith was convicted of health care fraud and money laundering/multiple monetary transactions. While concededly serious offenses, these were ***non-violent*** crimes. In fact, Mr. Smith has no history of violence. This is confirmed by his BOP PATTERN Risk Scoring of "0" for Violent Offense and "None" for History of Violence (see **Exhibit F** at Ex.8). Thus, Mr. Smith poses no danger to other persons or the community if he is released to home confinement.

Further, if released, Mr. Smith has a release plan providing for housing, employment, transportation and health care (see **Exhibit F** at Ex.9). In this regard, Mr. Smith has housing available - an apartment at 17201 Northwood Highway, in

Arcadia, Michigan where there are **_0_** reported cases of Covid-19).  *Id.*  Mr. Smith also has employment available from multiple sources (construction and general labor).  *Id.*  This employment will allow Mr. Smith to purchase health insurance and pay restitution.  Mr. Smith also has transportation available through family and friends.  *Id.*  Finally, Mr. Smith has health insurance available to him to ensure he has access to proper medical treatment.  *Id.*  In sum, Mr. Smith poses no danger to the community if released and has a bona fide release plan to ensure his success.

### B. The need for the sentence imposed.

The Court's sentence of 51 months in prison followed by 2 years of supervised release reflects the seriousness of Mr. Smith's offenses and promotes respect for the law.  This sentence also provides a deterrent to Mr. Smith.  It bears mention that Mr. Smith's underlying criminal acts consisted of billing BCBS for services which were not provided.  Due to his criminal conviction, Mr. Smith's license to practice psychology was revoked, he is now barred from billing BCBS and his practice is now closed.  In short, given his conviction,  Mr. Smith no longer has the ability (or inclination) to engage in this conduct.

### C. The kinds of sentences available and sentencing range.

The Court was aware of the sentences it could impose on Mr. Smith and is undoubtedly aware of its ability to modify that sentence given the current Covid-19 pandemic.  With respect to sentencing, it is notable that the Court sentenced Mr.

Smith to the lowest range under the guidelines (51 months), reflecting its view of the proportionality of the sentence to Mr. Smith's conduct.

### D. The need to provide restitution to any victims of the offense.

As above, if released, Mr. Smith has employment awaiting him from multiple sources. This employment will enable Me. Smith to make restitution to BCBS.

### E. Pertinent policy statements.

Attorney General Barr's March 26 and April 3, 2020 memorandums set forth the BOP's pertinent "policy statement" regarding the Covid-19 pandemic. Covid-19 presents an "emergency condition" and the government must "move with dispatch in using home confinement, where appropriate, to move vulnerable inmates out of [BOP] institutions." As set forth in Mr. Smith's requests for release, he meets all of Attorney General Barr's criteria to serve his sentence in home confinement which are: (i) age and vulnerability to Covid-19, (ii) serving time at low/minimum security facility, (iii) exemplary conduct while incarcerated, (iv) PATTERN risk score of minimum, (v) verifiable reentry plan (**Exhibit F**). Further, Mr. Smith also satisfies the Program Statement 7320.01 CN-1 eligibility requirements for home confinement: (i) no public safety factors, (ii) excellent institutional adjustment, (iii) stable residence and supporting family, (iv) confirmed employment, (v) little or no need for services of a community corrections center. In short, Mr. Smith satisfies

all BOP requirements to be released to home confinement and he should be released to home confinement to protect his life.  *Id.*

## **CONCLUSION**

The Court sentenced Mr. Smith to 51 months in prison, it did not sentence him to death, which is what he faces if he remains incarcerated. The Covid-19 pandemic presents an extraordinary and compelling reason for this Court to (i) modify Mr. Smith's prison sentence to time served and (ii) allow him to serve the remainder of his sentence in home confinement.  Mr. Smith respectfully requests that the Court grant him this relief.  As President Lincoln stated long ago:  "Mercy bears richer fruits than strict justice."

Respectfully submitted,

LEIF K. ANDERSON PLC

By:  /s/ Leif K. Anderson          .
Leif K. Anderson (P53305)
P.O. Box 1146
Clarkston, MI 48347
248-917-9062
leif@thevikinglawyer.com

Date:  June 17, 2020          *Attorney for Defendant Paul L. Smith*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America

                                      Criminal Case No: 18-cr-20411

          Plaintiff,                    Hon. Bernard A. Friedman

v.

Paul Lucki Smith,

          Defendant.

_____

## **NOTICE OF HEARING**

       Please take notice that Defendant's Emergency Motion for Modification of

Sentence Under 18 U.S.C. §3582(c)(1)A)(i) Due to Covid-19 will be brought on for

hearing heard on _____, 2020 at _____am/pm (date and time

to be set by the Court).

                                   Respectfully submitted,

                                   LEIF K. ANDERSON PLC

                            By:  /s/ Leif K. Anderson_____.
                                 Leif K. Anderson (P53305)
                                 P.O. Box 1146
                                 Clarkston, MI 48347
                                 248-917-9062
                                 leif@thevikinglawyer.com
Date:  June 17, 2020                *Attorney for Defendant Paul L. Smith*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America

                  Criminal Case No: 18-cr-20411

        Plaintiff,           Hon. Bernard A. Friedman

v.

Paul Lucki Smith,

        Defendant.

_____

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 17, 2020, I filed Defendant's Emergency Motion for Modification of Sentence Under 18 U.S.C. §3582(c)(1)A)(i) Due to Covid-19 and Brief in Support, Notice of Hearing and this Certificate of Service with the Clerk of the Court using the Court's electronic filing and service system, which will serve copies of these documents on counsel of record, and that on June 16, 2020, I served these documents by First Class Mail on Warden T.J. Watson, FCI Terre Haute, Federal Correctional Institution, 4200 Bureau Road North, Terre Haute, IN 47808.

        LEIF K. ANDERSON PLC

        By:  /s/ Leif K. Anderson     .
             Leif K. Anderson (P53305)
             P.O. Box 1146
             Clarkston, MI 48347
             248-917-9062
             leif@thevikinglawyer.com
Date:  June 17, 2020        *Attorney for Defendant Paul L. Smith*